## Simons' License

*Frank S. Hughes*, for appellant.
*Frank H. Rockwell*, contra.

CRICHTON, P. J., December 30, 1935.—This is an appeal from the action of the Pennsylvania Liquor Control Board in refusing to renew the liquor license of the appellant. The latter conducts a restaurant in the second ward of the Borough of Wellsboro, Tioga County. During the year 1935 he held a license for the sale of liquor at retail in this restaurant. Under the regulations of the board, Tioga County is in district number four, and the license year in that district now begins on August 1st. The licensee therefore, on November 7, 1935, applied to the board for an extension of his license to July 31, 1936. The application was refused by the board, and therefrom the applicant took this appeal.

The sole ground for the refusal of the license was that at the municipal election held on November 5, 1935, in the Borough of Wellsboro the electors voted upon the question as to whether such licenses should be granted therein,

and that a majority of them voted against the granting thereof. At the hearing in this court it was agreed by the parties that the applicant has complied with all the requirements of law and all the regulations of the board, and that his character and qualifications are unobjectionable.

There is no dispute as to any of the facts involved. There are two wards in the Borough of Wellsboro, each of them comprising an election district. At the election mentioned the following question appeared on the ballots in the election district of the first ward, to wit: "Do you favor the granting of liquor licenses for the sale of liquor in Borough of Wellsboro, first ward?" On this question, which is exactly reflected in the report made by the court as a computing board, 418 ballots were voted "Yes", and 494 were voted "No". On the ballots used in the second ward the following question appeared, to wit: "Do you favor the granting of liquor licenses for the sale of liquor in the Borough of Wellsboro, second ward?" On this question, also so reflected in the report of the computing board, 368 ballots were voted "Yes", and 333 were voted "No". The first ward therefor voted "No," and the second ward "Yes", but if the two questions above quoted be regarded as identical the borough as a whole voted "No".

There is no dispute as to the number of votes cast nor as to the correctness of the report of the computing board; nor is there any complaint as to the conduct of the election. This proceeding is in no sense an attempt to attack the election results collaterally. We are faced with a clear-cut problem, and that of law, not of fact. Is there legal authority for the placing of these questions on the ballot, and if not what is the effect of the balloting in this instance?

Section 501 of the Liquor Control Act of July 18, 1935, P. L. 1246, is the authority, and the only authority, for an election on the question of granting such licenses. It provides inter alia that:

"In any municipality an election may be held . . . to

determine the will of the electors with respect to the granting of liquor licenses by the board to hotels, restaurants, and clubs within the limits of such municipality."

Section 502 prescribes the form of the question that may appear on the ballot. It is: "Do you favor the granting of liquor licenses for the sale of liquor in ————— of ——————?" Supplying the blanks for this particular case the question should be "Do you favor the granting of liquor licenses for the sale of liquor in Borough of Wellsboro?"

We do not decide that a slight variation from this exact wording not affecting the meaning would invalidate the election. But the authority for holding the election is purely statutory, and there must at least be a substantial compliance with the provisions of the statute. And especially must this be so when the words used do not effectuate the result which the legislature contemplated. The authority is for an election by the electors of the municipality, in this case, the Borough of Wellsboro. What have we here? There can be no question as to the meaning of the words that were used on the ballots and reflected in the computed returns. The voters of the first ward were asked whether they favored the granting of licenses in the first ward of the Borough of Wellsboro, and that is the question they voted on. They did not vote on the question as to whether or not they favored such licenses in the whole borough. And likewise in the second ward. We have no election on the only question upon which it can be held. A ward is not a municipality. It is merely an arbitrary division of a municipality created for administrative purposes. It follows that even if the questions printed on the ballots could be regarded as in proper form, the answers do not constitute a mandate by the electors of the borough that there shall be no licenses in the borough. At the very best they constitute only an expression of the electors of the first ward that there be no licenses in that ward, and an expression of the electors of the second ward that licenses be allowed in that ward.

If the right of the electors to express their preference as to their own ward alone existed in law, the license here in question would have to be granted, because the restaurant of the applicant is in the second ward, which voted in favor of licenses. But we are told by appellee (and correctly) a license may not issue on that ground alone, because the legislature has not seen fit to extend the right of local option to wards as units, and the expression of the will of the electors of the second ward in this case is a mere nullity. Further, however, we are told by appellee, it was not a nullity, but we must add the votes cast in the first ward on the question as to whether licenses shall be granted in that ward, to the votes cast in the second ward on the question as to whether they should be granted in that ward, and determine by the result what the wishes of the electors are as to the granting of licenses in the borough as a whole. To state the argument is to furnish its refutation. It is to let the wish be father to the thought. It is asking us to say that the electors of Wellsboro voted upon a question upon which they emphatically did not vote. It is asking us arbitrarily to refuse to accept the meaning of the plain English that appeared on the ballots.

There is no question here of the intention of the voters. The principle is too well established to need discussion that where the right of franchise exists it can be exercised only in the manner prescribed by law. It may well be true that the electors thought that they were voting on the question of the granting of licenses in the borough as a whole; but we have no right to assume that as a matter of law. Shall we attempt to correct the error of one public officer by allowing another public officer to rule that because a thing should have been done it was done, in the face of proof that it was not done? That is to substitute arbitrary judgment for the rules of law. We can only take what the legislature has provided, construe its meaning, and determine whether its mandate has been followed in the particular case before us. Obey-

ing that duty, we can only find that under the law there can be no election as to the granting of licenses in a ward alone, that in this case a question was printed on the ballots that had no legal right there, and that there was in the legal sense no expression of the will of the electors of the Borough of Wellsboro on the question as to whether licenses should be granted therein. It well may be that the will of the people has for a time been thwarted by a mistake. It is better that we labor under the results of an error than that the confidence of our people in their institutions should be undermined by the thought that the plain letter and meaning of the law may be made to yield to the exigencies of a particular situation.

### Order

And now, December 30, 1935, the appeal is sustained and the order of the Liquor Control Board refusing the license is reversed, and it is directed that a restaurant liquor license issue to the appellant upon the filing of his bond, the payment of the legal license fee, and the compliance by him with all legal rules and regulations of the board.　　　From G. Mason Owlett, Wellsboro.